UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL CASE NO. 23-118-DLB-CJS

COLE BRADLEY                                                            PLAINTIFF

v.                      **MEMORANDUM OPINION AND ORDER**

PELOTON INTERACTIVE, INC.
PELOTON-DENVER                                   DEFENDANTS

*** *** *** ***

This matter is before the Court upon the Motion to Dismiss filed by Defendants Peloton Interactive, Inc. and "Peloton-Denver"[1] (together, "Peloton"). (Doc. # 8). Plaintiff Cole Bradley filed a Response (Doc. # 10), Peloton filed a Reply (Doc. # 11), and the Motion is ripe for review. For the reasons stated below, Peloton's Motion to Dismiss (Doc. # 8) is **granted in part and denied in part**.

I.      FACTUAL AND PROCEDURAL BACKGROUND

This matter arises from a former employment relationship between Bradley, as employee, and Peloton, as employer. (Doc. # 1-1 at 5). Bradley is an individual and resident of Kenton County, Kentucky. (*Id.*). Peloton is a Delaware corporation that primarily sells exercise equipment to consumers. (*See id.* at 5, 7). Bradley was initially hired as a seasonal employee of Peloton in December 2019, but he became a full-time employee of the company in July 2020. (*Id.* at 5-6). Although Bradley submits that his

---

[1]      In the Motion, Peloton submits that Peloton-Denver is "a non-existent entity[.]" (Doc. # 8 at 1 n.1). Peloton further submits that for purposes of the Motion, Peloton-Denver "adopts and offers the arguments made under the collective 'Peloton.'" (*Id.*). However, Peloton-Denver "does not waive any arguments for prompt dismissal on the basis of its non-existent status." (*Id.*).

1

job title was "Field Specialist," he does not outline the responsibilities and duties of the position. (*See id.* at 6).

At all relevant times, Peloton had an Employee Stock Purchase Program ("ESPP") through which its employees could invest in the company. (*See id.*). Over a two-year period, Bradley invested fifteen percent of each of his paychecks into the ESPP. (*Id.*). According to Bradley, this investment was attractive due to Peloton's growth in stock value during the COVID-19 pandemic. (*See id.*). Bradley was only permitted to sell purchased stock two times per year, and the dates on which he could sell the stock coincided with the release of Peloton's earning reports. (*Id.*). Peloton's management was free to sell their purchased stock at any time. (*Id.* at 7). Bradley also submits that although Peloton's management received a 2021 Christmas bonus, he did not. (*Id.*).

In February 2022, Peloton began having trouble selling its products and laid off 3,000 of its employees. (*Id.*). Although each of the laid off employees received an $8,000 severance package, Bradley was not among the employees laid off and was not offered any severance. (*Id.*). Instead, he continued to be employed by Peloton. (*Id.*). Although Bradley's employment with Peloton continued, he submits that his "job changed completely and he took all the responsibilities of all the workers laid off without an increase in pay." (*Id.*). According to Bradley, Peloton "unilaterally changed the terms and conditions of [its] employment contract with [Bradley]" by requiring him to complete additional duties without a commensurate increase in pay. (*Id.*). Bradley's new duties included building and cleaning exercise bicycles, stocking and organizing Peloton's warehouse, scanning merchandise, and "getting bikes prepared for the next day." (*Id.*). In the Complaint, Bradley describes this work environment as "awful." (*Id.*). Bradley

2

resigned from Peloton in August 2022.  (*Id.*).

According to Bradley, Peloton would miss earnings reporting deadlines and the company's "stock would plummet ten to fifteen percent." (*Id.* at 6).  Bradley submits that around the time he resigned from Peloton, the company's stock value had dropped to $8 per share from its "height" of $160 per share.  (*Id.* at 7).  According to Bradley, this drop in share value rendered his ESPP investments "worthless."  (*Id.*).  Bradley submits that the ESPP "was all a sham to dupe/induce [Bradley] to staying employed with [Peloton]." (*Id.* at 8).

Bradley alleges that he was promised overtime hours by Peloton but that this was "[a]nother false promise by [Peloton] to dupe/induce [Bradley] to maintain employment with [Peloton]."  (*Id.* at 9).  According to Bradley, Peloton employees would work in pairs when delivering exercise equipment to customers.  (*See id.* at 8).  But if an employee was close to reaching 40 working hours during a week, Peloton's "managers would switch the two person team at the last minute to insure [sic] no overtime was obtained and the other team member would be 'shorted a shift[.]'"  (*Id.* at 9).

Bradley further submits that deliveries of bicycles fell from a height of eight to nine per day to a low of two to three per day.  (*Id.* at 8).  Toward the end of his employment, Bradley could barely "get [30] hours per week."  (*Id.*).  According to Bradley, "[e]verything had been a sham to dupe/induce [Bradley] to stay employed with [Peloton]."  (*Id.*).  Bradley further submits that he "suffered economic hardships due to fraudulent misrepresentations by [Peloton]."  (*Id.* at 9).

On July 31, 2023, Bradley filed suit in Kenton Circuit Court asserting four claims against Peloton: (i) violation of section 367.170 of the Kentucky Consumer Protection Act

3

("KCPA"); (ii) breach of contract; (iii) declaratory and injunctive relief; and (iv) fraudulent misrepresentation. (*Id.* at 10-12). On September 6, 2023, Peloton filed a Notice of Removal with this Court. (Doc. # 1).

On September 20, 2023, Peloton filed the instant Motion to Dismiss arguing that Bradley has failed to state a claim against Peloton. (Doc. # 8). Bradley responded (Doc. # 10), Peloton replied (Doc. # 11), and the Motion is ripe for review.

## II.     DISCUSSION

### A.     Standard of Review

Peloton moves to dismiss the Complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. # 8). The Federal Rules of Civil Procedure require a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). This "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quotations omitted).

The plaintiff must put forward enough facts that the court could reasonably infer "that the defendant is liable for the misconduct alleged." *Id.* When considering a Rule 12(b)(6) motion to dismiss, a district court "must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true, and determine

4

whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Hooker v. Anderson*, 12 F. App'x 323, 325 (6th Cir. 2001) (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).

Federal courts apply the substantive law of the forum state in diversity actions. *See City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581, 585 (6th Cir. 2001) (citing *Hanover Ins. Co. v. Am. Eng'g Co.*, 33 F.3d 727, 730 (6th Cir. 1994)). Therefore, Kentucky substantive law will apply to Bradley's claims. That said, federal pleading standards still control. *See Lee v. Vand. Univ.*, No. 22-5607, 2023 WL 4188341, at *3 (6th Cir. June 22, 2023) (citing *Wilkey v. Hull*, 366 F. App'x 634, 637 (6th Cir. 2010)); *see also Red Hed Oil, Inc. v. H.T. Hackney Co.*, 292 F.Supp.3d 764, 771-72 (E.D. Ky. 2017).

**B.   Analysis**

Peloton moves for relief pursuant to Rule 12(b)(6), arguing that none of Bradley's four claims have been properly pled. (Doc. # 8). Before turning to this argument, however, the Court will address two procedural defects which separately justify granting the Motion.

First, Bradley's Response was untimely. Peloton filed its Motion to Dismiss on September 20, 2023. (*See* Doc. # 8). Under the Local Rules, Bradley was required to file his Response 21 days thereafter or on or before October 11, 2023. *See* L.R. 7.1(c). But Bradley did not file his Response until October 23, 2023. (*See* Doc. # 10). Bradley's failure to timely file his Response is itself a sufficient basis for granting the Motion. *See* L.R. 7.1(c) ("Failure to timely respond to a motion may be grounds for granting the motion.").

5

Second, the Response is insufficient.  The Response, consisting of one (1) page, states in its entirety as follows:

> As is in [sic] the norm, the facts on pages one and two of [Peloton's] Motion to Dismiss are completely misrepresented.  The Complaint pleads a fraudulent scheme whereby Peloton manipulated Cole Bradley's ability to fairly buy and sell the Peloton stock.  The Complaint is well pled and provides all the details.  There is no need to repeat them here.  The KCPA does apply by the very definition of the Act: "unfair false, misleading and deceptive acts of parties in the conduct of any trade or commerce."  The contractual relationship is also well pled, as is his loss.  Fraud is pled with specificity.
>
> Not to be trite, but paragraphs 6-20 of the Complaint provide all [Bradley] needs to defeat the motion.
>
> Count I, II, II [sic] and IV in referencing those facts state a claim.
>
> There is no need to cite law.  The law cited by Defendants when applied to the facts pled warrant overruling the motion to dismiss.

(Doc. # 10).  Bradley offers no substantive analysis of the issues before the Court.  Instead, he merely provides conclusory arguments that his claims are well pled.  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regul. Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)).  Bradley's failure to adequately respond to the Motion constitutes a second reason for granting it.  *See id.*

Having determined that the above procedural deficiencies justify granting the Motion, the Court will nevertheless determine whether Bradley's claims survive Peloton's Rule 12(b)(6) defense.  For the reasons stated below, the Court concludes that they do

6

not. As discussed above, Bradley has raised the following four claims against Peloton: (i) violation of the KCPA; (ii) breach of contract; (iii) declaratory and injunctive relief; and (iv) fraudulent misrepresentation. (Doc. # 1-1 at 10-12). The Court will address the claims in turn.

### 1. Violation of the KCPA

The KCPA forbids any "[u]nfair, false, misleading, or deceptive acts in the conduct of any trade or commerce[.]" Ky. Rev. Stat. § 367.170(1). Actionable claims under the KCPA concern the purchase or lease of "goods or services primarily for personal, family[,] or household purposes[.]" Ky. Rev. Stat. § 367.220. Moreover, "[c]laims may only be brought under the KCPA by individuals who personally purchase goods or services from a merchant." *Keaton v. G.C. Williams Funeral Home, Inc.*, 436 S.W.3d 538, 546 (Ky. Ct. App. 2013) (citing Ky. Rev. Stat. § 367.220(1)). "[A] contractual relationship is the crux of a KCPA claim." *Gearheart v. Express Scripts, Inc.*, 422 F. Supp. 3d 1217, 1224 (E.D. Ky. 2019) (citing *Keaton*, 436 S.W.3d at 546). A plaintiff asserting a claim under the KCPA must also show an "ascertainable loss of money or property[.]" *See Corder v. Ford Motor Co.*, 869 F. Supp. 2d 835, 837 (W.D. Ky. 2012) (quoting Ky Rev. Stat. § 367.220(1)).

Peloton makes three arguments for the dismissal of Bradley's KCPA claim. (*See* Doc. # 8 at 3-6). First, Pelton argues that Bradley has failed to "plead any protected activity under the KCPA." (*Id.* at 4). Second, Peloton claims that Bradley has failed to show a contractual relationship between himself and Peloton. (*Id.* at 5). Third, Peloton argues that Bradley has failed to show any ascertainable loss of money or property. (*Id.* at 5-6). For the reasons stated below, the Court finds Peloton's first argument to be

meritorious. Accordingly, the Court need not—and will not—address Peloton's second and third arguments.

In his Complaint, Bradley does not clearly articulate which actions of Peloton supposedly violated the KCPA. And as discussed above, Bradley made no effort to clarify his claims in his Response. Liberally construed, the Complaint could be read to claim that Peloton violated the KCPA by: (1) initially treating Bradley as a part time employee despite him working 40 hours per week; (2) offering the ESPP to Bradley but restricting his ability to freely sell purchased stock; (3) not offering Bradley any severance and retaining him despite laying off other employees; (4) altering Bradley's job responsibilities without increasing his pay; (5) not paying Bradley a 2021 Christmas bonus; and/or (6) promising overtime hours to Bradley but then preventing him from working such hours. (*See* Doc. # 1-1 at 5-9).

However, none of these actions involve the purchase of goods or services from Peloton for personal, family, or household purposes. Thus, the KCPA does not apply. *See* Ky. Rev. Stat. § 367.220(1). Moreover, courts in the Sixth Circuit have indicated that KCPA claims brought by an employee against his or her employer are not actionable. *See Bowen v. Paxton Media Grp., LLC*, CIVIL ACTION NO. 5:21-CV-00143-GNS, 2022 WL 4110319, at *10 (W.D. Ky. Sept. 8, 2022) ("Plaintiffs cite no Kentucky law allowing a claim . . . under [the] KCPA by an employee against an employer."). Based on the above, the Motion is **granted** as to Bradley's KCPA claim.

### 2.     *Breach of Contract*

To prove breach of contract under Kentucky law, a plaintiff must show: (1) existence of a contract; (2) breach of that contract; and (3) damages resulting from the

breach. *Cont'l Refin. Co., LLC v. Hartford Steam Boiler Inspection & Ins. Co.*, 350 F. Supp. 3d 601, 607 n.3 (E.D. Ky. 2018) (citing *Metro Louisville/Jefferson Cnty. Gov't v. Abma*, 326 S.W.3d 1,8 (Ky. Ct. App. 2009)). "[F]or a breach of contract claim to survive a Rule 12(b)(6) motion to dismiss . . . , a plaintiff must adequately plead . . . the specific contract provision breached." *Pearson v. Specialized Loan Servicing, LLC*, No. 1:16-cv-318, 2017 WL 3158791, at *4 (E.D. Tenn. July 24, 2017) (quoting *Shafron v. Aviva Life & Annuity Co.*, No. 1:11 CV 00732, 2014 WL 763238, at *5 (N.D. Ohio Feb. 21, 2014)).

Peloton makes two arguments for the dismissal of Bradley's breach of contract claim. (*See* Doc. # 8 at 6-8). First, Peloton argues that Bradley "fail[ed] to attach the alleged contract or describe the contract's terms sufficiently[.]" (*Id.* at 6). Second, Peloton argues that any breach of contract claim would be barred by the statute of frauds. (*Id.* at 7-8). For the reasons stated below, the Court finds Peloton's first argument to be meritorious, and thus need not—and will not—address Peloton's second argument.

According to the Complaint, Peloton "did not perform their duties under the employment contract in any way, shape, or form under Kentucky law[.]" (Doc. # 1-1 at 10). Upon review, however, Bradley does not clearly articulate how Peloton supposedly breached his employment contract. (*See id.* at 4-13). Moreover, Bradley does not identify any provision of his employment contract that Peloton supposedly breached. (*See id.*). He has accordingly failed to adequately plead breach of contract. Thus, the Motion is **granted** as to Bradley's breach of contract claim.

### 3. Declaratory and Injunctive Relief

"The Declaratory Judgment Act provides that, in a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other

9

legal relations of any interested party seeking such declaration." *Watson v. Progressive Direct Ins. Co.*, Civil Action No. 5:22-203-DCR, 2022 WL 18027628, at *11 (E.D. Ky. Dec. 30, 2022) (quoting 28 U.S.C. § 2201(a)) (internal quotation marks omitted). Injunctive relief is that which "command[s] or prevent[s] an action." *Injunction*, BLACK'S LAW DICTIONARY (11th ed. 2019). A party seeking declaratory or injunctive relief "must establish that an 'actual controversy' exists, or that the party has standing to bring a claim." *Watson*, 2022 WL 18027628, at *11; *see also Grendell v. Ohio Sup. Ct.*, 252 F.3d 828, 832 (6th Cir. 2001). "As the Supreme Court has noted, past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive [or declaratory] relief . . . if unaccompanied by any continuing, present adverse effects." *Grendell*, 252 F.3d at 832 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)) (internal quotation marks omitted).

Peloton makes two arguments for the dismissal of Bradley's declaratory and injunctive relief claim. (*See* Doc. # 8 at 8-9). First, Peloton argues that Bradley's allegations in support of the claim are conclusory. (*Id.* at 8). Second, Peloton argues that Bradley has failed to demonstrate standing to assert the claim. (*Id.* at 8-9). The Court finds both arguments to be meritorious.

In the Complaint, Bradley describes his claim for declaratory and injunctive relief as follows:

> 64. The named Plaintiff seeks the following declarations for relief under **KRS CHAPTER 418** and other applicable law for his collective claims.
>
> 65. Plaintiff further seeks an Injunction against the Defendants prohibiting such wrongful and negligent conduct of Defendants detailed above.

10

(Doc. # 1-1 at 11) (emphasis in original).  In reviewing Bradley's Complaint at paragraphs 64 and 65, it appears that he neglected to articulate what form of declaratory and injunctive relief he is requesting.  Indeed, Bradley merely proffers conclusory allegations that he is entitled to such relief.  This is insufficient.  *See Powers v. Merck & Co., Inc.*, 773 F. App'x 304, 306 (6th Cir. 2019) (per curium) ("Conclusory allegations are never sufficient to overcome a motion under Rule 12(b)(6).").  Moreover, Bradley does not allege in his Complaint that he is continuing to suffer any injury.  (*See* Doc. # 1-1 at 4-13).  Instead, he merely points to Peloton's past actions.  (*See id.*).  Thus, Bradley has failed to show standing.  Based on the above, the Motion is **granted** as to Bradley's declaratory and injunctive relief claim.

### 4. *Fraudulent Misrepresentation*

Under Kentucky law, fraudulent misrepresentation is comprised of six elements:

(1)  The defendant made a material representation to the plaintiff;
(2)  The representation was false;
(3)  The defendant knew the representation to be false or made it with reckless disregard for its truth or falsity;
(4)  The defendant intended to induce the plaintiff to act upon the misrepresentation;
(5)  The plaintiff reasonably relied upon the misrepresentation; and
(6)  The misrepresentation caused injury to the plaintiff.

*Giddings & Lewis, Inc. v. Indus. Risk Ins.*, 348 S.W.3d 729, 747 (Ky. 2011).  Under Rule 9(b) of the Federal Rules of Civil Procedure, a party alleging fraud "must state with particularity the circumstances constituting fraud[.]"  Fed. R. Civ. P. 9(b).  To meet this requirement, the party "must allege the time, place, and content of the misrepresentation on which [the plaintiff] relied, the fraudulent scheme, the intent of the defendants, and the resulting injury."  *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*,

11

941 F.Supp.2d 807, 821 (E.D. Ky. 2013) (quoting *Anderson v. Pine S. Cap.*, 177 F.Supp.2d 591, 596-97 (W.D. Ky. 2001)) (internal quotation marks omitted).

Peloton argues that Bradley failed to plead his fraudulent misrepresentation claim with particularity. (*See* Doc. # 8 at 9-10). The Court agrees. Bradley alleges that Peloton "dup[ed]/incuce[d] [him] into staying employed by [Peloton] during [the COVID-19 pandemic]." (Doc. # 1-1 at 11). Although Bradley is not clear on this issue, the Court understands him to claim that Peloton "dupe[d]" him in three different ways. First, Bradley claims that Peloton offered the ESPP to Bradley but restricting his ability to freely sell purchased stock. (*Id.* at 6-7). Second, Bradley alleges that he was falsely promised overtime hours. (*Id.* at 9). Third, Bradley broadly alleges that "[e]verything" Peloton did was "a sham to dupe/induce [Bradley] to stay employed with [Peloton]." (*Id.* at 8-9). Apart from Peloton's alleged promise regarding overtime, however, Bradley does not identify any representation of Peloton whatsoever—much less a fraudulent representation. Moreover, Bradley does not allege the time and place in which any supposed misrepresentation was made. Bradley has accordingly failed to plead his fraudulent misrepresentation claim with particularity as required by Rule 9(b).

In the Motion, Peloton requests that the Court dismiss each of Bradley's claims with prejudice. (*See* Doc. # 8 at 1, 10). Generally, "an order of dismissal under Rule 12(b)(6) is construed to be a ruling on the merits and is entered with prejudice." *Worick Land Holdings, LLC v. Scott Cnty. Rural Land Mgmt. Bd., Inc.*, Civil Action No. 5:23-049-DCR, 2023 WL 3910246, at *3 (E.D. Ky. June 8, 2023) (citing *Rogers v. Stratton Indus.*, 798 F.2d 913, 917 (6th Cir. 1986)). However, the Sixth Circuit has cautioned against dismissing claims with prejudice on Rule 9(b) grounds without first affording the plainitff

12

an opportunity to amend the complaint. *See U.S. ex rel. Bledsoe v. Cmty. Health Syss., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003). Thus, although the Court will dismiss Bradley's KCPA, breach of contract, and declaratory and injunctive relief claims with prejudice, it will dismiss Bradley's fraudulent misrepresentation claim without prejudice at this juncture. Thus, the Motion is **granted in part and denied in part** as to Bradley's fraudulent misrepresentation claim.

### III.   CONCLUSION

Thus, for the reasons set forth herein, **IT IS ORDERED** that:

(1)   Peloton's Motion to Dismiss (Doc. # 8) is **GRANTED IN PART AND DENIED IN PART**;

(2)   Bradley's KCPA, breach of contract, and declaratory and injunctive relief claims are each **DISMISSED WITH PREJUDICE**;

(3)   Bradley's fraudulent misrepresentation claim is **DISMISSSED WITHOUT PREJUDICE**; and

(4)   This matter is **STRICKEN** from the Court's active docket.

This 14th day of March, 2024.



Signed By:
*David L. Bunning*  DB
United States District Judge

K:\DATA\ORDERS\Cov2023\23-118 MOO on MTD.docx

13